**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE REMINGTON TECH CORPORATION, INC., | ) ) ) |
| Plaintiff-Appellee, | ) ) |
| vs. | ) ) |
| TED MLSNA, | ) ) |
| Defendant-Appellant. | ) |

Case No. 03 C 7373
Judge Joan H. Lefkow

## MEMORANDUM OPINION AND ORDER

This is an appeal from a final decision of the bankruptcy court (Bankr. Case No.

01 A 422) finding the debt owed by Defendant-Appellant Ted Mlsna ("Mlsna") to Plaintiff-

Appellee, The Remington Tech Corporation, Inc. ("Remington") non-dischargeable under

11 U.S.C. § 523(a)(6) in the amount of the judgment previously awarded in state court in the

sum of $312,849.46, plus reasonable attorneys' fees and costs incurred in this matter. The

bankruptcy court's jurisdiction was founded in 28 U.S.C. §§ 1334 and 157(b)(2)(I), and this

court's jurisdiction over the appeal is invoked under 28 U.S.C. § 158(a)(1). The matter was tried

to the court before the Honorable John H. Squires, Bankruptcy Judge. As an appeal of a core

proceeding under 28 U.S.C. § 157(b)(2)(I), this court reviews the bankruptcy court's findings of

fact under a clearly erroneous standard and conclusions of law under a *de novo* standard. *In re

Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002). For the reasons set forth herein, this court affirms in

part and reverses in part the bankruptcy court's judgment and remands the case for further

proceedings in conformity with this opinion.

## FACTS AND PROCEDURAL HISTORY

Mlsna was the vice president and employee of Teleresources, Inc. ("Teleresources"), which sold and serviced telephone systems to the public. Mlsna's duties included office operations, bookkeeping, sales, accounts receivable, accounts payable, making deposits into Teleresources' accounts, and invoicing customers for work performed by Teleresources.

On August 7, 1996, Teleresources, by its president, Hans Hermann ("Hermann"), entered into a factoring agreement (the "Agreement") with Remington whereby Remington agreed to lend money to Teleresources in return for an assignment of Teleresources' eligible receivables. Mlsna did not sign the Agreement because he opposed it as too onerous and expensive. Herrmann guaranteed the Agreement pursuant to a written guaranty. Pursuant to paragraph eight of the Agreement, Remington received a security interest in all accounts receivable, contract rights, assets, equipment, customer lists and all proceeds of the accounts receivable and contract rights. Under paragraph 6, Teleresources, as the seller, made certain representation, warranties and covenants to Remington, as the purchaser. Specifically, this paragraph provided in pertinent part,

> Each Account shall be the Property of the Purchaser and shall be collected by Purchaser, but if for any reason it should be paid to Seller, Seller shall promptly notify Purchaser of such payment, shall hold any checks, drafts, or monies so received in trust for the benefit of Purchaser, and shall promptly endorse, transfer and deliver the same to the Purchaser . . . .

Remington was to collect all amounts on receivables of Teleresources, pay the interest and other charges due pursuant to the Agreement, and remit the funds less the interest and other charges to Teleresources. Under the Agreement, title of the accounts receivable passed to Remington upon execution of the document. Moreover, under the Agreement, Teleresources was not permitted to deposit any collected receivables to its own account. Teleresources,

2

however, did in fact deposit accounts receivable payments that should have been transferred to Remington.

Remington issued its schedule status reports evidencing the accounts that Remington purchased under the Agreement on July 29, 1997, October 19, 1998, January 7, 1999 and January 12, 1999. From the date of its execution through November 7, 1997, the Agreement was amended seven times to increase the factoring credit line from the original amount of $50,000.00 to $185,000.00. Like the Agreement, each amendment extending the credit line was signed and guaranteed by Herrmann.

Roland Kaeser ("Kaeser"), the president of Remington, testified that on February 17, 1998, when the amount being lent to Teleresources was increased pursuant to the eighth amendment from $185,000.00 to $235,000.00, he insisted that Mlsna be bound individually by the Agreement and requested that Mlsna sign the amendment. Mlsna reluctantly signed the eighth amendment, though he contends that he signed the amendment only as a corporate officer, not as a guarantor. There was no reference on or near the signature space in what capacity Mlsna signed the amendment.

Teleresources also had a separate distributor agreement with Ameritech Corporation ("Ameritech"). Teleresources had a long-standing relationship with Ameritech as an authorized distributor for its products and received commissions from it for sale of products and services. Teleresources would obtain contracts for customers with Ameritech, which in turn would pay Teleresources commissions and residuals arising under its distributor agreements. Ameritech would wire the monies directly into Teleresources' bank account. Teleresources, at one point, was owed approximately $400,000.00 in accounts receivable from Ameritech.

3

Ameritech's agreement contained restrictions and provisions preventing its commissions owed to Teleresources from being assigned. Ameritech's agreement expressly stated that it was not assignable and that the receivables for monies for commissions due by Ameritech could not be transferred to any creditor of Teleresources. Thus, Mlsna testified that the Ameritech receivables were not assigned to Remington under the Agreement or any of its amendments. Mlsna did not advise Remington of the restriction in the Ameritech agreement. Teleresources received substantial payments directly from Ameritech, which were not paid to Remington. There was nothing in the Agreement referring to the fact that the Ameritech receivables could not be assigned to Remington. Kaeser testified that the Ameritech receivables were one of the major reasons Remington agreed to lend Teleresources money under the Agreement. Additionally, Herrmann testified that the Ameritech receivable was included under the Agreement and was intended to be assigned to Remington.

Kaeser testified that when he entered into the Agreement with Teleresources on behalf of Remington, he was under the belief that all of the eligible accounts receivable under the terms of the Agreement assigned by Teleresources were valid; that the receivables did not cover warranty work; that work had not been cancelled; and that none of the receivables had been encumbered in favor of another creditor. Kaeser stated that had he known that collections were being made by Teleresources outside of the terms of the Agreement, or that notices had been sent to assigned accounts receivable to pay Teleresources directly, instead of Remington, he, on behalf of Remington, would not have agreed to lend any money to Teleresources. Relations between the firms deteriorated, and Teleresources was unable to maintain the required ratio under the borrowing base terms of the Agreement for eligible receivables to debt owed.

4

On January 8, 1999, Remington terminated the Agreement, tendered all purchased receivables to Teleresources, and demanded payment of the unpaid factoring line of credit and other charges from Teleresources. The defaults persisted and the demand was not satisfied. Hence, Remington filed a five-count Complaint in the Circuit Court of Cook County, Illinois against Teleresources, Mlsna, and Herrmann alleging breach of contract against Teleresources and fraud and conversion against Teleresources, Hermann, and Mlsna. On September 13, 2000, the court entered a default judgment in favor of Remington and against Mlsna and Hermann, jointly and severally, on the fraud and conversion counts in the amount of $285,149.96, plus attorneys' fees in the amount of $27,699.50 and costs in the amount of $895.61. Remington never received repayment of the principal amount lent to Teleresources. Remington did, however, receive payment for interest pursuant to the Agreement through December 1998.

Mlsna filed a Chapter 7 bankruptcy petition on February 5, 2001. On May 4, 2001, Remington filed the adversary complaint now on appeal asserting that the debt owed by Mlsna to Remington was non-dischargeable under 11 U.S.C. § 523(a)(2)(A), § 523(a)(4) and § 523(a)(6). On July 31, 2003, following an evidentiary hearing, the bankruptcy court found the debt dischargeable under § 523(a)(2)(A) and § 523(a)(4) but non-dischargeable under § 523(a)(6) in the amount of judgment previously awarded in state court in the sum of $312,849.46, plus reasonable attorney's fees and costs. On September 8, 2003, Mlsna filed a notice of appeal to this Court. Remington did not file any cross appeal on the Bankruptcy Court's ruling.

## DISCUSSION

Section 523(a)(6) of the Bankruptcy Code excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

5

11 U.S.C. § 523(a)(6). In holding that Mlsna's debt to Remington was non-dischargeable under

§ 523(a)(6), the bankruptcy court found that Mlsna

> acted willfully and intentionally and intended the resulting consequences of his actions–that Teleresources receive the collected amounts receivable instead of the Creditor. The Debtor's actions were intentional and the conversion was not innocent or technical. As an experienced businessman, the Debtor knew that the resulting injury would occur to the Creditor when it did not receive the payments it was entitled to under the Agreement. Moreover, the Court finds that the Debtor's actions in directing and orchestrating the conversion of the assigned receivables were malicious for purposes of § 523(a)(6). Those actions were wrongful and intentional over an extended period of time, which caused the resulting injury to the Creditor who was deprived of the proceeds. Further, the Debtor's actions were taken without just cause or excuse in clear violation of the Agreement. Thus, the Court finds the debt non-dischargeable, as liquidated by the state court, in the sum of $312,849.46 under § 523(a)(6).

*In re Mlsna*, 2003 WL 21785648, at *9 (Bkrtcy. N.D. Ill. July 31, 2003).

Mlsna does not challenge the bankruptcy court's finding that his actions were willful and

malicious for purposes of § 523(a)(6). Rather, he argues that the bankruptcy court erred when it

found that the entire amount of the state court judgment was non-dischargeable under

§ 523(a)(6), without inquiring into how much of the state court judgment was directly

attributable to the actions taken by Mlsna. Mlsna contends that, by failing to do so, the

bankruptcy court improperly gave the state court judgment collateral estoppel effect.

The court disagrees. In its state court complaint, Remington alleged that Mlsna

committed fraud and conversion and that by these actions he caused damage to Remington "in

an amount in excess of Two Hundred Thousand Dollars ($200,000.00)." (Count II ¶ 8; Count IV

¶ 6.) Under Illinois law, "[w]ell pleaded allegations of a complaint are considered admitted by a

defendant when held in default." *Eckel* v. *Bynum*, 608 N.E. 2d 167, 173 (Ill. App. 1st Dist. 1992).

Thus, when Mlsna was held in default by the state court, he admitted all of the allegations in

Remington's complaint, including the allegation that his actions damaged Remington in an

6

amount in excess of $200,000. The state court calculated the actual damages to Remington to be $285,149.96, and awarded Remington an additional $27,699.50 in attorneys' fees and $895.61 in costs.[1]

According to the Seventh Circuit, the "effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment." *In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004). Under Illinois law, default judgments have issue-preclusive effects on subsequent litigation. *See In re Caton*, 157 F.3d 1026, 1028-29 (5th Cir. 1998) ("[T]he doctrine of collateral estoppel may be applied to default judgments under Illinois law."); *Paternity of Rogers*, 697 N.E.2d 1193 (Ill. App. 1st Dist. 1998); *Grisanzio* v. *Bilka*, 511 N.E.2d 762 (Ill. App. 1st Dist. 1987). Thus, the state court's judgment that Mlsna's actions damaged Remington in the amount of $285,149.96 bound the bankruptcy court.

This, of course, did not settle the issue of whether the $285,149.96 in damages constituted a non-dischargeable debt under § 523(a)(6). For that determination, the bankruptcy court had to make the additional finding that Mlsna's actions – the same actions that the state court had already determined caused $285,149.96 in damages – were "willful and malicious." The bankruptcy court did so, and its findings are not clearly erroneous. Thus, the bankruptcy court correctly found that the $285,149.96 constituted a non-discharageable debt under § 523(a)(6).

---

[1]Mlsna argues that the state court awarded Remington "contractual damages" and made no findings as to specific damages caused by Mlsna's actions. This assertion is not supported by the state court record. The state court entered a default judgment against Mlsna for fraud and conversion, not breach of contract. Remington brought a separate count for breach of contract against Teleresources, but this count is not mentioned in the state court default judgment. The state court may have relied on the Agreement to determine the damages caused by Mlsna's fraud and conversion, but this does not make the default judgment an award of "contractual damages."

In addition, the bankruptcy court itself heard evidence and made findings that Mlsna damaged Remington's property by diverting to Teleresources the proceeds of receivables that should have been paid to Remington. Hearing Exhibit II, which was admitted in evidence, demonstrates resulting damages in excess of $300,000.00 in property belonging to Remington. The bankruptcy court's finding that Mlsna caused damages in this amount is not clearly erroneous in light of the hearing testimony, admitted exhibits, and the state court default judgment.

The bankruptcy court also did not err when it held non-dischargeable the state court's award of an additional $27,699.50 in attorneys' fees and $895.61 in costs. Provided that the injury was both willful and malicious, as the bankruptcy court found it was, the exception to discharge provided by § 523(a)(6) extends to "any debt for" the injury. The Supreme Court has held that the phrase "debt for" in § 523(a) means "'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like, . . . connoting broadly any liability arising from the specified object." *Cohen* v. *De La Cruz*, 523 U.S. 213, 220 (1998) (internal citations omitted). In *Cohen*, which concerned the § 523(a)(2)(A) discharge exception, the court held that "any debt" encompassed "treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Id.* at 223. Similarly, the Seventh Circuit has held non-dischargeable "ancillary obligations such as attorneys' fees and interest [that] may attach to the primary debt; . . . ." *Klingman* v. *Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987); *see also In re Pawlinski*, 170 B.R. 380, 381 (Bankr. N.D. Ill. 1994) (finding award of attorneys' fees non-dischargeable where attorneys' fees were awarded in underlying state court action). Because the attorneys' fees and costs incurred by Remington in the state court action stemmed from Mlsna's acts,

8

which the bankruptcy court determined were willful and malicious, they are non-dischargeable under § 523(a)(6).[2]

Mlsna also argues that the bankruptcy court erred in failing to consider whether Mlsna, as an officer of Teleresources, could be held personally liable for his acts. There is no indication in the record, however, that Mlsna raised this issue before the bankruptcy court. Thus, he has waived the argument. *See Schoenfeld* v. *Apfel,* 237 F.3d 788, 793 (7th Cir.2001) (noting that the Seventh Circuit has long held that appellants waive issues and arguments on appeal if they were not raised before the trial court).

Mlsna also argues that the bankruptcy court erred in rejecting his affirmative defense that the debt was fully satisfied by the sale of Teleresources' assets to Carnegie International. The bankruptcy court rejected this argument because Mlsna failed to set forth any persuasive evidence or cite to any controlling authority to establish these affirmative defenses, on which he had the burden of proof. Thus, the court held that Mlsna waived the argument. *Mlsna,* 2003 WL 21785648, at *10 (citing *United States* v. *Lanzotti,* 205 F.3d 951, 957 (7th Cir.) (holding that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived)). This was a legitimate ground for rejecting Mlsna's argument.

---

[2]The state court may have erred in awarding attorneys' fees to Remington in the underlying state court action. Under Illinois law, an award of attorney's fees and costs is not proper unless authorized by statute or agreed to by contract. *See, e.g., Rhodes* v. *Uniroyal, Inc.,* 427 N.E.2d 1380, 1382 (Ill. App. 3d Dist. 1981). Since the state court entered the default judgment against Mlsna only on the counts for fraud and conversion, there does not appear to have been a proper basis for the awarding of attorneys' fees and costs. Nevertheless, the state court did so, and Mlsna did not object or move to vacate the default judgment. The instant appeal of the bankruptcy court's decision is not the proper place to challenge the propriety of the state court's damage award.

Finally, Mlsna argues that the bankruptcy court erred in awarding Remington attorneys' fees for the adversary action. The bankruptcy court relied on paragraph 6 of the Agreement in determining that an award of attorneys' fees was proper. Paragraph 6 provides

> Seller shall hold harmless and defend Purchaser from and against any and all losses, claims, demands, liabilities, suits, actions, causes of action, administrative proceedings or costs (including attorneys' fees and costs and expenses of defense) arising out of (a) any breach or violation of any representation, guarantee or warranty set forth in this Agreement . . . or (c) any other breach or violation of this Agreement by Seller.

Mlsna, however, did not sign the original agreement; he signed only the Eighth Amendment to the Agreement, increasing the credit line by $50,000. The bankruptcy court noted that the parties disputed whether Mlsna signed the Amendment in his capacity as a corporate officer or as an individual guarantor, but made no explicit finding of fact on the issue. Without such a finding, paragraph 6 of the Agreement cannot form the basis for the award of attorneys' fees. Thus, the court reverses the decision of the bankruptcy court to award attorney's fees and remands this case for further proceedings to determine whether Mlsna was a party to the Agreement in his individual capacity and whether he is thus bound by paragraph 6 of the Agreement.

## ORDER

For the reasons set forth above, the judgment of the bankruptcy court is affirmed in part and reversed and remanded in part.

ENTER:

_____

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 15, 2005

10